**CROSS QUEEN, INC., Plaintiff**

**v.**

**DIRECTOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant**

Civil No. 144/1979

District Court of the Virgin Islands

Div. of St. Croix

September 24, 1980

---

[2] See Complaint, Count II, ¶17.

JEFFREY L. RESNICK, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

ISHMAEL A. MEYERS, ESQ., United States Attorney, St. Thomas, V.I., *for defendant*

ROBERT D. SOKOLOVE, ESQ. (Office of General Counsel, Federal Emergency Management Agency), Washington, D.C., *for defendant*

SILVERLIGHT, *Judge By Designation*

## MEMORANDUM OPINION WITH ORDER ATTACHED

This case is before the court on motion of defendant for summary

judgment under Rule 56, Fed. R. Civ. P. From the depositions, affidavits, and exhibits of the parties the court finds the following facts, for the purpose of the instant motion.

In February 1977, owner of the Caravelle Hotel located in Christiansted, St. Croix, purchased from defendant a standard flood insurance policy (SFIP) issued pursuant to the National Flood Insurance Act of 1968.[1] The policy covered the period February 25, 1977, to February 25, 1978, and insured against all "direct loss by flood."

On or about October 7, 1977, plaintiff suffered damages throughout the three floors of its hotel. Damages to the upper floors occurred when rain fell against the sliding glass doors leading into the various rooms, collected on the balconies or "balustrades" attached to the upper portions of the hotel, and seeped into the rooms throughout the upper floors.[2] The inability of the drains on the bottom of the balustrades to sufficiently drain the water caused the water to so collect.[3]

On October 17, 1977, plaintiff corporation through its director, Lon Southerland, notified defendant of claimed flood damages to its hotel. Defendant's representative inspected the loss and concluded that the policy afforded coverage for none of the damage done to the upper floors and for only part of the damage done to the ground floor. He prepared and presented to Tom Rodenhaver, assistant manager of the hotel, a proof of loss showing a claim in the amount of $527.65. Rodenhaver expressed dissatisfaction with the figure but, nonetheless, signed the proof of loss.

On July 17, 1978, more than nine months after the claimed loss, plaintiff submitted a second proof of loss in the amount of $21,700 representing damage to its entire hotel. By letter of January 24, 1979, defendant rejected that claim on the ground that it included damages not covered by the policy. Plaintiff then instituted this suit.

The following contentions made by defendant in support of its motion for summary judgment will be addressed herein.

---

[1] 42 U.S.C. § 4001 et seq. (1970), as amended (Supp. 1973).

[2] Affidavit of Martin A. Kazimir, Adjuster, General Adjustment Bureau, for defendant, March 31, 1980; deposition of Lon Southerland, President, Cross Queen, Inc., p. 7–9; deposition of Tom Rodenhaver, Assistant Manager, Caravelle Hotel, January 10, 1980, p. 8, 9.

[3] Southerland deposition, January 10, 1980, p. 9. Rodenhaver deposition, January 10, 1980, p. 8, 9.

## I. THE ALLEGED DAMAGE TO PLAINTIFF'S HOTEL WAS NOT AS A RESULT OF "FLOOD" AS DEFINED BY THE SFIP

The insurance policy insures against all "direct loss by flood." It defines "flood" as:

> A. A general and temporary condition of partial or complete inundation of normally dry land areas from:
> 1. The overflow of inland or tidal waters.
> 2. The unusual and rapid accumulation or runoff of surface waters from any source. . . .[4]

Defendant argues that this definition is clear and unambiguous and that losses to the upper floors of plaintiff's hotel cannot be said to have resulted from "flood" as that term is defined in the policy. This court agrees.

Since flood waters did not rise from the ground floor to reach the upper floors of plaintiff's hotel, the water which affected the upper floors did not emanate from the "inundation of normally dry land areas," as required by the SFIP. Furthermore, the damage did not meet the further qualifications of "flood." The damage certainly was not caused by the "overflow of inland or tidal waters." Nor was it caused by "surface waters" as those terms have commonly been interpreted. See 93 C.J.S. Waters § 112 (surface waters defined as those which fall on the land from the skies or arise in springs and diffuse themselves over the *surface of the ground* . . .); Block v. Franzen, 79 N.W.2d 446, 450 (Neb. 1956) (surface waters defined as those which comprehend waters from rain, springs or melting snows which lie or flow on the *surface of the earth*); Aetna Fire Underwriters Ins. Co. v. Crawley, 207 S.E.2d 666, 668 (Ga. 1974) (where homeowner's insurance policy insured against damage by surface waters, the policy comprehended damage from water on the *surface of the ground* and, therefore, excluded coverage for damage from rainwater which fell on the insured's roof and flowed into the insured's dwelling) (all emphasis added).

While the court agrees with defendant that the losses to the upper floors did not fall within "flood" as defined in the SFIP, it must go on to consider whether the losses come within the additional definition found in the Act. "Flood" is defined there in the following language:

---

[4] This definition is codified at 24 C.F.R. § 1909.1.

(1) the term "flood" shall have such meaning as may be prescribed in regulations of the Secretary, and may include inundation from rising waters or from the overflow of streams, rivers, or other bodies of water, or from tidal surges, abnormally high tidal water, tidal waves, tsunamis, hurricanes, or other severe storms or deluge. . . .[5]

The only language arguably applicable to the subject damages is that referring to inundation from "severe storms or deluge." Such inundation, in the context of the Act, would result from rising coastal waters occasioned by severe off-shore storms, hurricanes, and tsunamis. Mason v. National Flood Insurers Associations, 361 F.Supp. 939 (D. Haw. 1973). It is not contended that the damages to the upper floors of plaintiff's hotel resulted from rising coastal waters.

■ The court concludes that the type of damage which occurred to the upper floors is covered by neither the Act nor by the flood insurance policy issued by defendant.[6] Accordingly, defendant is granted summary judgment pursuant to Rule 56(d), Fed. R. Civ. P., insofar as those damages are concerned.

## II. PLAINTIFF DID NOT SUBMIT A TIMELY PROOF OF LOSS AS REQUIRED BY THE SFIP AND FEDERAL REGULATION

■ Paragraph "O" of the general conditions and provisions section of the SFIP, in pertinent part, provides:

O. Requirements in Case of Loss—. . . Within 60 days after the loss, unless such time is extended in writing by the Insurer, the Insured shall render to the Insurer, a proof of loss, signed and sworn to by the Insured. . . .[7]

Plaintiff's loss occurred on October 7, 1977, and proof of loss had to be filed within 60 days thereafter. Thus, under the requirements of paragraph "O", plaintiff's deadline for filing its proof of loss was December 7, 1977, in the absence of a written extension of time by the insurer. No written waivers have been presented. Plaintiff's July 17, 1978, proof, therefore, was untimely. The fact that defendant

---

[5] 42 U.S.C. § 4121(a)(1).

[6] This conclusion makes it unnecessary for the court to address defendant's additional contention that the upper floor damages were caused by perils specifically excluded from the coverage under the terms of the policy.

[7] The 60-day proof of loss requirement is codified at 24 C.F.R. § 1911.2(a)(2).

considered the untimely proof, as evidenced by its letter rejecting same, is of no consequence.

■ It is a general principle of insurance law that receipt and retention of a proof of loss after the time limited by the policy, together with conduct which leads the insured to assume that the time-limit provision would not be insisted upon, operates to waive that provision in the policy. 14 G. Couch, Couch on Insurance Sec. 49: 784 (2d Ed. 1965). General doctrines of waiver, however, are not applicable where the insurer is an agency of the United States. It is well-established that where the insurer is an agency of the United States procedural requirements must be strictly complied with. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380 (1947); Rock Island, Arkansas & Louisiana R. Co. v. United States, 254 U.S. 141 (1920). Applying this rule, the courts have almost invariably denied recovery where the claimant failed to comply with proof of loss requirements found in insurance policies issued under federal programs. Roberts v. Federal Crop Insurance Corp., 158 F.Supp. 688 (E.D. Wash. 1958), aff'd, 260 F.2d 958 (9th Cir.); Felder v. Federal Crop Insurance Corp., 146 F.2d 638 (4th Cir. 1944); United States v. Blackburn, 109 F.Supp. 319 (E.D. Wash. 1952); see also Mock v. United States, 183 F.2d 174 (10th Cir. 1950). More specifically, many cases announce the rule that a waiver of proof of loss requirements will not be based on the statements or actions of the governmental insurer's representative.[8] Felder v. Federal Crop Insurance Corp., supra; United States v. Blackburn, supra; Byrne v. Federal Crop Insurance Corp., 289 F.Supp. 873 (D. Minn. 1968).

■ In addition, paragraph "D" under the general conditions and provisions section of the SFIP, in pertinent part, states:

D. Added and Waiver Provisions—. . . No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be

---

[8] The court is aware of only two cases in which the doctrine of waiver has been applied against the federal government acting as insurer. Neither, in our view, has great precedential value. In Jackson v. National Flood Insurers Association, 398 F.Supp. 1383 (S.D. Tex. 1974), the United States District Court for the southern district of Texas applied state law in an area which, under the decided cases, is controlled by federal law. In Knisely v. Federal Crop Insurance Corporation, 334 F.Supp. 425 (S.D. Ohio 1971), since the defendant shifted its position from rejecting the insured's claim for failure to file a timely proof of loss to declaring the entire contract void because of legal failures in its formation, the court held that substantive contract law, rather than regulations issued pursuant to the Federal Crop Insurance Act, was controlling.

waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.

This provision, as well as paragraph "O" set out above, makes it clear that only one method is available for extending or waiving the time period within which proofs of loss must be filed, and that is by written authorization from the Insurer.

The 60-day proof of loss requirement being clearly set forth in the policy and applicable regulation and the doctrine of waiver being inapplicable, there is no genuine issue of material fact with respect to plaintiff's noncompliance with the proof of loss provisions. For the reasons expressed in parts I and II hereof, partial summary judgment in defendant's favor will be granted denying liability as to the claim presented in the July 17, 1978, proof of loss.[9]

## ORDER

Upon consideration of the depositions, affidavits and exhibits of the parties, and for the reasons set forth in the opinion filed herewith, the defendant is granted partial summary judgment pursuant to Rule 56(d), Fed. R. Civ. P., dismissing that portion of plaintiff's complaint which seeks to recover for damages to the upper floors of the plaintiff's hotel and which seeks recovery pursuant to the July 17, 1978, proof of loss submitted by the plaintiff.

---

[9] The question whether or not Rodenhaver had authority to sign the first proof of loss is not before the court on this motion. If the trial of this matter shows that his signing of the proof was neither authorized nor ratified by plaintiff, plaintiff will be permitted to recover —0—. If, however, the proof of loss signed by Rodenhaver is valid, it will set the maximum permitted recovery. Plaintiff will only be permitted to recover ground floor damages in the maximum amount of $527.65.