**Stuart DIAMOND as Assignee of Milton Lomask and/or Martha Lomask, Plaintiff,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, General Accident Insurance Company of America and New York Property Insurance Underwriting Association, Defendants.**

No. 86 CV 2989.

United States District Court, E.D. New York.

June 27, 1988.

---

Weg and Meyers, P.C., New York City, for plaintiff; Dennis D'Antonio, of counsel.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., for defendant FEMA; Joseph McCann, Asst. U.S. Atty., of counsel.

BARTELS, District Judge.

Hurricane Gloria struck the eastern seaboard of the United States on September 27, 1985, causing extensive wind and flood damage to property on Long Island and Fire Island. Among the houses affected by the storm was one located at Lot 795 on Champlain Street in Ocean Bay Park, Fire

Island that was owned by Milton and Martha Lomask. At the time of the Hurricane, the Lomask property was insured against flood damage under a policy issued by the National Flood Insurance Program ("NFIP")[1]. The form of the policy, which appears at 44 C.F.R. Pt. 61, App. A(1), required the insured, in order to recover damages due to flood loss, to file a sworn proof of loss[2] with the insurer within 60 days of the loss, unless that period was extended, in writing, by the NFIP.

The plaintiff in this action, Stuart Diamond, first rented a part of the Lomask home during the summer of 1984. Later, during the summer of 1985, Diamond rented the entire house and, on or about September 21, 1985, tentatively agreed to purchase it for $170,000 during a phone conversation with the Lomasks at their principal residence in London, U.K. One or two days after Hurricane Gloria, Diamond again called the Lomasks in London to inform them of the storm damage to their property. During that long distance conversation, it was agreed that the sale of the home would go forward at the pre-hurricane price, predicated upon Diamond ultimately receiving the funds necessary for repair from NFIP's anticipated payment on the Lomasks' flood claim[3]. To effectuate this procedure, Lomask orally assigned his flood insurance policy (and the proceeds therefrom) to Diamond at that time, contingent upon Diamond's actual purchase of the house. However, no evidence was adduced suggesting that the assignment was attested to, acknowledged before a government official, certified, or otherwise conducted in accordance with 31 U.S.C. § 3727.

Several days later, Diamond reported the loss to Terry & Gibson, the Lomasks' insurance agent, and also contacted the public adjusting firm of Sapperstein, Hochberg & Haberman ("the Sapperstein firm") to represent him in the casualty loss. NFIP, on the other hand, contracted with Daynard & Van Thunen, an independent insurance adjusting firm, to investigate plaintiff's claim on November 9, 1985. Daynard and Van Thunen, in turn, assigned that task to their employee, Scott Williams.

These actions precipitated a series of events that are not considered in their chronological order. Daynard & Van Thunen wrote NFIP seeking an extension of the 60 day proof of loss filing deadline, which was subsequently *de facto* extended by NFIP until the end of December. Meanwhile, the Sapperstein firm, on behalf of plaintiff, arranged for loss evaluations of the home's contents and structure, while Williams inspected the premises, pursuant to the request of a private insurance company in connection with an assessment of wind damage. At the same time, Williams also determined the extent of flood damage at the Lomask home. Thereafter, Sapperstein spoke to Williams, who discussed the "ins and outs of the claim" but did not specifically instruct Sapperstein to do anything with respect to the required proof of loss filing. Meanwhile, Martha Lomask authorized Diamond to act as her agent to pursue the flood claim, by a letter dated November 15, 1985. Six weeks later, on December 30, 1985, the contract of sale for the home was signed, and that same day, Lomask's prior oral assignment of the NFIP policy to Diamond was finalized in writing, to induce the latter to buy the home at the pre-hurricane, contract price.

In particular, the written assignment encompassed "any and all proceeds which may be due us from the [blank] insurance company or any other insurance company which insured the aforementioned premises by reason of any loss sustained due to the

---

1. The National Flood Insurance Program ("NFIP") is statutory, and falls within the responsibility of the Federal Emergency Management Agency ("FEMA"). Within FEMA, the Federal Insurance Administration ("FIA") is the subsidiary agency that actually administers the program.

2. Through the use of proofs of loss, the government seeks to deter frivolous claims by requiring claimants to swear to the veracity of each loss.

3. The Lomask home was also insured against wind damage by the General Accident Insurance Company of America and the New York Property Insurance Underwriting Association.

recent damage caused by Hurricane Gloria...."

Two other relevant events occurred on December 30th: 1) Hochberg, an attorney and member of the Sapperstein firm, requested that the 60 day proof of loss filing period be extended yet another two weeks, by a letter addressed directly to the NFIP; and 2) Diamond signed a proof of loss directly below the phrase "Milton Lomask, by Stuart Diamond as representative per letter," in which he attributed approximately $36,000 in flood damage to the hurricane.

Significantly, Hochberg's stated justification for the filing extension request was that since the Lomasks were out of the country, "we have had much difficulty in getting the proof of loss to you as of this date." Defendant's Exhibit L. Hochberg's letter therefore indicates that plaintiff, through his representative, at least suspected that absent Milton Lomask's signature, any proof of loss filed would be ineffective under the policy. It should also be noted that Sapperstein then had in his possession a copy of the Lomask policy, which had previously been sent by Lomask to Diamond.

The next day, December 31st, a member of the Sapperstein firm physically delivered the aforementioned proof of loss signed by Diamond to the office of Daynard & Van Thunen, where it was eventually seen by Williams who, however, did not forward it to NFIP. Instead, Williams informed Sapperstein by phone that the proof of loss was signed by a "tenant" and was therefore "not valid." After that phone conversation, Williams, aware of the Hochberg extension request noted above, assumed that Sapperstein was going to file another, properly signed proof of loss.

The NFIP granted Hochberg's request for an extension on January 16, 1986, pursuant to which the 60 day period was extended to February 3, 1986. Nevertheless, for some unknown reason Diamond did not file a proof of loss with NFIP during the

extension period or at any time thereafter, and Williams never forwarded the December 31st proof of loss signed by Diamond to NFIP.

On April 7, 1986 Diamond closed on the Lomask home. Approximately two months later, on June 2nd, the NFIP claims examiner assigned to the case, Liz Gilbert, asked Williams to forward his final report and submit a proof of loss for signature. Williams later did draw up a proof of loss for approximately $6,000 in flood damage sometime in early July, which Diamond refused to sign, whereupon the unsigned proof of loss, together with Williams' final report, and various other background documents were forwarded to NFIP.

The NFIP officially denied Diamond's damage claim by letter dated September 11, 1986, which explicitly delineated his failure to file a timely proof of loss as one reason therefor. As a result, plaintiff commenced this suit against defendant FEMA as assignee of the Lomasks, seeking recovery under their policy for flood loss. During the resulting 7 day bench trial, numerous witnesses were heard and exhibits entered into evidence.

### Discussion

At trial, defendant sought to establish, among other points, two legal and complete defenses to the complaint: 1) that plaintiff lacks standing to prosecute his claim due to an invalid assignment; and 2) that plaintiff, in pursuing the Lomasks' flood damage claim, failed to comply with the policy's 60 day proof of loss filing requirement, which is a condition precedent to suit under the insurance contract.

### Assignment

■■■ With respect to the assignment's validity defendant argues that the sequence of events necessary to its proper execution either did not occur or were in violation of the Federal Assignment of Claims Act ("the Act").[4] The legal princi-

---

**4.** The Federal Assignment of Claims Act, which appears at 31 U.S.C. § 3727, provides that:

"(a) In this section, 'assignment' means—

(1) a transfer or assignment of any part of a claim against the United States Government or an interest in the claim; ...

ples applicable to the Act are fairly straightforward. Designed, in part, to alleviate the government from the burden of determining with whom it must deal, the statute applies to all voluntary transfers or assignments of claims against the United States with two exceptions: transfers by will and general assignments for the benefit of creditors. See *U.S. v. Shannon,* 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952); *U.S. v. Aetna Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *Naartex Consulting Corp. v. Watt,* 722 F.2d 779 (D.C.Cir.1983). By contrast, involuntary transfers, such as subrogations effected as a matter of law, do not fall within the purview of the Act. *Aetna Surety Co., supra.* Where the Act applies, noncompliance with its terms will defeat the assignment. *Shannon, supra.*

In this case, it is undisputed that neither party to the Lomask assignment complied with the Act's terms. Rather, plaintiff contests the applicability of the Act to this case, and argues, in the alternative, that the doctrines of waiver and estoppel should preclude its assertion by defendant.

■ No case has come to our attention in which § 3727 has been applied to an insurance policy issued by FEMA or one of its subdivisions. Nevertheless, the Act has been applied to claims arising in contexts analogous to the instant one. *See, e.g., Bernert Towboat Co. v. USS Chandler,* 666 F.Supp. 1454 (D.Or.1987) (Act applies to bar assignment of claim to cargo bailee by bailor regarding goods damaged by U.S. Navy ship, who then sued government for damages); *Farm Bureau Mut. Ins. Co. v. U.S.,* 5 Cl.Ct. 142 (1984) (government employee's assignment to insurance company of any and all rights arising out of assignor's automobile accident while acting with-

in the scope of his employment void for noncompliance with the Act). In view of the broad construction that § 3727 has been given by other courts, and the facial applicability of that statutory section to the voluntary assignment made here, it follows that the Act does apply to the instant case.

■ Similarly, plaintiff's waiver argument need not detain us. In essence, plaintiff argues that defendant waived its defense under the Act by not affirmatively raising it either in defendant's answer or pretrial order. Defendant, on the other hand, contends that in par. 13 of its answer, the statement that "[p]laintiff Stuart Diamond lacks standing to bring this suit," which appears as an affirmative defense, sufficiently preserved the § 3727 issue for trial. The Court agrees with defendant. This rejection of the plaintiff's argument is also required by the general rule that a party who fails to properly plead affirmative matter may nevertheless take advantage of his opponent's proof if such proof establishes the defense. *Marger v. Bell,* 510 F.Supp. 9, 13 (D.Maine 1980). Where, as here, a plaintiff relies solely upon an assignment that, on its face, does not comply with § 3727, the aforementioned rule has been applied to defeat the plaintiff's waiver argument on facts less favorable to the defendant than appear in the case at bar. *See id.*

■ Plaintiff also contends that the government should be estopped from invoking the Act by reason of its noninclusion in that portion of the policy entitled "What Law Governs," [5] claiming that such phrase precludes application of the Act to the insurance policy. Considering the primary of federal statutes over federal regulations, we disagree. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47

(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the offi-

cial completely explained the assignment when it was acknowledged...."

5. The pertinent portion of the policy, entitled "ARTICLE X—WHAT LAW GOVERNS," reads as follows:

This policy is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.) and the Federal common law.

L.Ed.2d 668 (1976); *Theriault v. Brennan,* 488 F.Supp. 286, 299 (D.Maine 1980) aff'd 641 F.2d 28 (1st Cir.1981). *Compare Urban Data Systems, Inc. v. U.S.,* 699 F.2d 1147, 1153–54 (Fed.Cir.1983) (United States not estopped from asserting that a federal statute was violated by a contract clause appearing on a government form at the insistance of a government agency).

■ Consequently, the Court concludes that § 3727 is applicable and has not been complied with. Plaintiff's complaint must accordingly be dismissed for lack of standing.[6]

### Proof of Loss

■ While the above conclusion is a sufficient disposition of the case, the defendant has proffered an additional defense of untimely filing of the proof of loss, which plaintiff has challenged. In view of plaintiff's attempt to evade the embrace of the Act by joinder of the Lomasks, it is appropriate to discuss the proof of loss issue. Ordinarily, assertion of this defense may produce injustice in that a plaintiff is not covered for loss caused by flooding although he took out flood insurance based upon reasonable terms and conditions. *See Bolton v. Giuffrida,* 569 F.Supp. 30 (N.D. Calif.1983). However, "the courts have almost invariably denied recovery where the claimant failed to comply with proof of loss requirements found in insurance policies issued under Federal programs." *Cross Queen, Inc. v. Director, Fed. Emergency Mgt. Agcy.,* 516 F.Supp. 806, 809 (D.V.I. 1980); *Cohen v. Fed. Ins. Admin.,* 565 F.Supp. 823, 828 (E.D.N.Y.1983) (citing cases). This result is particularly appropriate where, as here, it appears that Diamond was given two extensions of time to file and for no apparent reason failed to comply with the terms of the policy, so that any resulting injustice is due to the conduct of plaintiff or his agents.

**6.** Plaintiff now seeks, after the close of evidence in the case, permission to join the Lomasks as parties under Fed.R.Civ.Pro. 17(a). Permission for joinder is a matter of the Court's discretion, which should not be exercised at this late date upon a showing of prejudice to the government.

In this case, the flood policy required Diamond to file a sworn proof of loss with NFIP within 60 days of the hurricane. Since plaintiff never filed a proof of loss directly with NFIP, the critical issue would therefore become whether the December 31st delivery of his proof of loss to Daynard & Van Thunen satisfied the policy's 60 day requirement. The determination of this issue hinges upon whether Williams, an independent insurance adjustor, was an agent of NFIP for the purpose of accepting physical delivery as the filing of an insured's proof of loss.

Both parties agree that Williams could neither bind the NFIP to accept a claim nor unilaterally extend the 60 day proof of loss filing period. However, on the specific agency issue presented here, the testimony was indecisive. Richard Brooks, Legal Director for NFIP, characterized the independent adjustor as a "leg" man who was authorized to "accumulate" data only and could not bind NFIP. The deposition testimony of Liz Gilbert, NFIP's claims examiner, wherein she stated that the practice regarding proof of loss filings was for the insured to submit his proof of loss to the independent adjustor, did not address itself to the narrow agency question herein presented. Scott Williams, the independent adjustor in this case, testified that an unspecified person at NFIP had orally instructed him to "accept" proofs of loss, but Williams apparently was not told that such acceptance would satisfy the policy's filing requirements.

By contrast, the relevant language of the policy is clear and unambiguous. Specifically, in the policy's preamble, the words "us" and "we" are defined as FEMA. Additionally, in Article VIII(I)(5) and (6), the policy states that:

5. *The insurance adjustor whom we hire to investigate your claim may furnish you with a proof of loss form, and she may help you to complete it. How-*

*See Hill v. BASF Wyandotte Corp.,* 782 F.2d 1212 (4th Cir.1986). However, aside from prejudice, there is no need to consider joinder where, as here, it would be utterly futile, for reasons that appear *infra. See Naartex,* 722 F.2d at 794–95.

ever, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjustor does not furnish the form or help you to complete it. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justification for that amount; *the adjustor is not authorized to approve or disapprove claims or to tell you whether a claim will be approved by us.*

6. We may, at our option, waive the requirement for the completion and filing of a Proof of Loss in certain cases, in which event you will be required to sign and, at our option, swear to an adjustor's report of the loss which includes information about your loss and the damages needed by us in order to adjust your claim. (emphasis added)

Furthermore, two passages appearing on the last page of the policy, under an unnumbered, unlettered section entitled "PROCEDURES IN CASE OF A FLOOD," add that:

—Make certain the claims adjustor fully explains all allowances and procedures for processing claims payments, based on your Proof of Loss, *which the policy requires you to send to us within 60 days of the loss;* and

—Any and all coverage problems and claim allowance restrictions must be communicated directly from NFIP—*claims adjustors* have no authority to approve or deny claims and *only report to NFIP on the elements of flood cause and damage.* (emphasis added)

Finally, Article VIII, letter D of the policy states, in relevant part, that:

This Standard Flood Insurance Policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator.

In view of the lack of written waiver[7] in this case by NFIP, these policy sections, in consideration of the previous testimony, convince the Court that Williams is an agent of NFIP for the limited purpose of obtaining and collecting information from an insured, including proofs of loss. However, he is not NFIP's agent for the purpose of accepting a proof of loss filing in satisfaction of the policy's 60 day requirement. As said by Judge Sifton in *Havemeyer Textile v. Federal Insurance Administrator,* 559 F.Supp. 956, 960 (E.D. N.Y.1983), an adjustor can be FEMA's agent "for some purposes" and not others.[8] *Compare Stark v. Giuffrida,* 1984 Fire & Casualty Cas. (CCH) $569 (S.D.Ala. September 13, 1983). On balance, we conclude that Diamond's filing with Williams did not satisfy the policy requirement that filing be made directly to NFIP, which must be fully complied with as a condition precedent to suit. See Plaintiff's Exhibit 4, Article 3, section Q.

Although neither party has raised the issue of estoppel against FEMA regarding Williams' conduct with respect to plaintiff's noncompliance, we believe that it is relevant to address this potential defense. To begin with, estoppel against the United States government is generally not permitted, *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1983); *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), except where there has been affirmative, serious misconduct by a government agent that was reasonably relied upon to a party's detriment.

7. Because the policy requires a written waiver, the Court concludes that even if Williams' testimony established an oral waiver by NFIP regarding filing proofs of loss with it, such oral waiver would be ineffective. *Cross Queen, Inc.,* 516 F.Supp. at 809; *But see Bolton, supra* (independent insurance adjuster deemed FEMA's agent when acting at FEMA's explicit instructions).

8. Plaintiff's argument that the policy language is ambiguous does not require a contrary result. Specifically, plaintiff points to Article VIII, section I(3), wherein the word "we" refers to the independent claims adjustor acting in his capacity as NFIP's agent. However, section I(3) merely establishes Williams' limited agency for the purpose of gathering information about the loss, which in no way contradicts the Court's interpretation of the policy language, read in context, appearing in section I(5) and (6). We therefore find no material ambiguity in the relevant policy provisions to construe against the defendant.

*See Patton v. Dole,* 806 F.2d 24, 30 (2d Cir.1986); *Herbert v. U.S.,* 662 F.Supp. 573, 583 (S.D.N.Y.1987) rev'd on other grounds *Herbert v. U.S.,* 850 F.2d 32 (2d Cir.1988); *Soler v. G & U Inc.,* 615 F.Supp. 736, 748 (S.D.N.Y.1985). Here, there was no such exception because, among other things, any reliance by plaintiff on the December 30th filing with Williams was unreasonable, in view of the express language of the policy, Sapperstein's experience as a public adjustor, and his firm's apparent subjective awareness of filing problems throughout the relevant period.[9] *Compare Mil-Spec Contractors, Inc., v. U.S.,* 835 F.2d 865 (Fed.Cir.1987); *Jenkins v. U.S. Dep't. Housing and Urban Development* 780 F.2d 1549 (11th Cir.1986).

In sum, Diamond has failed to comply with both the Act and the policy's 60 day filing requirement, each of which being a complete defense to plaintiff's claim for damages in this action.

The foregoing constitute the Court's findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Accordingly, the complaint is dismissed and judgment entered for the defendant.

SO ORDERED.

---

**9.** *Bolton, supra,* is distinguishable on the ground that the court therein found an insured had justifiably relied upon FEMA's apparent disregard of the 60 day filing requirement, whereas there was no such reliance here.