Joseph L. MESSA, Jr., John McDonald And Carol McDonald, h/w, 47 West 18th St. Condominium Ass'n, Plaintiffs,

v.

OMAHA PROPERTY & CASUALTY INSURANCE COMPANY, Defendant.

No. CIV.A. 99–2859(JBS).

United States District Court, D. New Jersey.

Oct. 30, 2000.

524

Joseph L. Messa, Jr., Ominsky & Messa, P.C., Marlton, NJ, for Plaintiffs.

Joseph D. Sams, Woodland Falls Corporate Park, Cherry Hill, NJ, and Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for Defendant.

## OPINION

SIMANDLE, District Judge.

The National Flood Insurance Program uses private insurers acting as fiscal agents of the United States Treasury to adjust and pay flood insurance claims for covered losses. The defendant in this case, Omaha Property & Casualty Insurance Company ("Omaha" or "Defendant"), is such a private insurer and issued a Standard Flood Insurance Policy ("SFIP") to plaintiffs Joseph L. Messa, Jr., and John and Carol McDonald ("Plaintiffs"). Plaintiffs are citizens and residents of Pennsylvania and co-own a condominium unit located at 47 West 18th Street in Ocean City, New Jersey ("the insured property"). The other plaintiff, 47 West 18th Street Condominium Association ("Association"), is an organization located in Pennsylvania, but which serves the interests of the owners of the insured property. Defendant Omaha is organized and exists under the laws of the State of Nebraska and has its principal place of business in Omaha, Nebraska, and it does continuous and systematic business in the State of New Jersey. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court also has federal question jurisdiction because the case involves the alleged breach of a SFIP issued pursuant to the National Flood Insurance Program ("NFIP"). *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 166 (3d Cir.1998).

On March 8, 2000, this Court granted defendant's motion to dismiss all state law-based, extra-contractual claims in the Complaint, leaving only the Plaintiffs' contract claims under their SFIP. Presently before this Court is Defendant Omaha's motion for summary judgment on those remaining contractual claims. For the reasons herein expressed, this Court finds that there are no genuine issues of material fact to be decided by a jury and that plaintiff's contractual claims fail as a matter of law. Defendant's motion for summary judgment will be granted and the complaint will be dismissed.

### I. *Background*

On June 3, 1995, plaintiffs entered into a contract (Residential Condominium Building Association Policy No. 3006469286) with defendant for insurance for direct physical loss by or from flood for a period of one year and renewable thereafter at yearly intervals. The policy was renewed for several years, and was renewed again for the term of June 3, 1997 to June 3, 1998. The policy limit is $250,000.00.

On February 5, 1998, a violent storm struck the south-eastern coast of New Jersey, producing high winds, rain, and dangerously high levels of water and tidal flooding, leading to a Presidential emergency declaration, under FEMA 1206 DR–NJ. As a direct result of this storm, plaintiffs claim that the insured property sustained severe and extensive flood damage which will require a substantial expenditure for repair and replacement costs and costs associated with preventing against additional deterioration. Plaintiffs provided prompt notice to the defendant, who sent an adjustor, Paul Scull, to conduct an inspection of the insured property on March 11, 1998. In a report dated March 12, 1998, Scull set the total claim payable at $6,664.73.

Upon receipt of defendant's loss report from Scull, plaintiffs immediately notified defendant of plaintiffs' disagreement with the estimate and informed defendant of their intention to secure the opinion of an independent engineer. On April 5, 1998, plaintiffs retained the services of F.A. Vinciguerra, P.E., an independent structural engineer, to inspect the property. On June 3, 1998, plaintiff Messa forwarded to defendant a copy of Mr. Vinciguerra's three page report, in which he described extensive wind and flood damage to the property and projected the total repair cost to be $71,500.00.

On June 17, 1998, after the sixty-day period for filing a sworn Proof of Loss under the SFIP had passed, defendant wrote to the Plaintiffs and informed them that their claim would be closed for failure to file a sworn Proof of Loss statement unless same was received by June 30, 1998. In their letter, Omaha clearly stated that they "d[id] not intend to waive or relinquish any of [their] rights or defense [sic], either listed or unlisted, under this policy of insurance." (Def.'s Mot. for Summ. J., Ex. C.) On August 1, 1998, Defendant retained its own engineer, Paul Hartzell, P.E., from National Forensic Consultants, Inc., to evaluate the flood damage to the insured property. Hartzell's six-page report, which had forty-five pictures attached, attributed most of the property damage to causes other than the flood, such as dry rot, roof leakage, and pre-existing structural imperfections. Hartzell indicated that he could not substantiate any of Mr. Vinciguerra's findings regarding severe damage allegedly caused by the February 5, 1998 storm.

On August 24, 1998, Defendant again wrote to Plaintiffs and informed them that their file would be closed unless a Proof of Loss was received within ten days. After the reports of both plaintiffs' and defendant's engineers were complete, each estimating the damage to the insured property, Scull assisted plaintiffs with their completion of a Proof of Loss form for $4,804.56. This form was not signed or returned to Defendant. On September 16, 1998, Defendant again corresponded with Plaintiffs and informed them that their claim was being closed due to failure to submit a sworn Proof of Loss. (See Def.'s Mot. for Summ. J., Ex. C.) On October 9, 1998, in response to Defendant's repeated warnings, Plaintiff Messa, an attorney admitted to practice in Pennsylvania and the attorney in this case, corresponded with Omaha and advised, "I was never provided with a 'Proof of Loss Form,' and I don't even know what you are referring to." (Def.'s Mot. for Summ. J., Ex. D.)[1] On April 15, 1999, approximately fifteen months after the original sixty-day period had lapsed, plaintiff Messa submitted a sworn proof of loss to Omaha with a total net claim of $4,804.56. (See Def.'s Mot. for Summ. J., Ex. F.) In a letter accompanying the Proof of Loss, Messa purported that he did not "waive or relinquish any of [his] rights to pursue claims for the full amount of damages of $71,500.00." (See Pls.' Opp. to Mot. for Summ. J., Ex. E.) On May 6, 1999, defendant issued a check to plaintiffs for $4,804.56 in full satisfaction of their claimed amount of loss. (See Def.'s Mot. for Summ. J., Ex. G.) No other Proof of Loss statement for more than $4,804.56 was ever submitted to Omaha by Plaintiffs.

On June 14, 1999, plaintiffs commenced this action for the balance of their claimed damages. According to plaintiffs, defendant has refused, and continues to refuse,

---

1. This court notes that Mr. Messa's repeated claims of ignorance regarding the proof of loss statement requirement do not benefit plaintiffs' position. SPIF Art. 10 § (O)(6) explicitly states that the Insured is obliged to complete a proof of loss form even if the Insurer's adjuster does not furnish the form or help the Insured complete it. As an attorney, plaintiff Messa certainly is charged with knowledge of published federal laws and cannot use ignorance as an excuse for failing to complete the requisite documentation for his claim.

to offer and pay a reasonable sum in settlement of plaintiffs' claim, thereby violating the express terms of the SFIP contract and the intent of the parties in the formation of the contract. Now before the Court is defendant's motion for summary judgment on Plaintiffs' contract claims pursuant to Fed.R.Civ.P. 56. For the reasons stated herein, defendant's motion will be granted.

## II. *Standards*

### A. *Summary Judgment Standard*

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir.1996); *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1288 (3d Cir. 1996); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 329–30 (3d Cir.1995) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505) ("[T]he nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.").

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir. 1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders other facts immaterial.

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. In such situations, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548; *Brewer*, 72 F.3d at 329–30 (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.").

The non-moving party, here the plaintiff, "may not rest upon the mere allegations or denials of" its pleading in order to show

the existence of a genuine issue. Fed. R.Civ.P. 56(e). They must do more than rely only "upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985) (citation omitted); *see Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324–25, 106 S.Ct. 2548. Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### B. *Law Governing the Standard Flood Insurance Policy*

■ It is well established that federal common law governs the interpretation of the Standard Flood Insurance Policy ("SFIP"). *Linder and Assoc., Inc. v. Aetna Cas. and Sur. Co.*, 166 F.3d 547, 550 (3d Cir.1999) (citations omitted); *Brookville Mining Corp. v. Selective Ins. Co. of America*, 74 F.Supp.2d 477, 479 (W.D.Pa. 1999). Thus, the SFIP should be interpreted by courts using standard insurance law principles, which require that the SFIP be given its plain, unambiguous meaning, and that all ambiguities be construed in favor of the insured. *Id.* Wherever the SFIP is open to more than one construction, courts should "adopt the one more favorable to the insurer." *Id.* (citing *Aschenbrenner v. United States Fidelity & Guaranty Co.*, 292 U.S. 80, 84–85, 54 S.Ct. 590, 78 L.Ed. 1137 (1934)).

### III. *Discussion*

#### A. *The National Flood Insurance Program ("NFIP")*

Plaintiffs' lawsuit presents a claim for breach of contract against an SFIP, which is a federally regulated and underwritten U.S. Government NFIP policy. The NFIP was established by Congress in 1968 pursuant to the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.* The program is federally subsidized and provides flood insurance below actuarial rates. *Gowland v. Aetna*, 143 F.3d 951 (5th Cir.1998). Though the program is designed to lose money, it actually costs the taxpayers far less than the taxpayers' annual bill for federally financed flood related disaster relief would be. 42 U.S.C. §§ 4001 and 4002.

■ Congress established the NFIP because of the unavailability of flood insurance from private insurance companies, which were unable to write flood insurance on an economically feasible basis. *Id.* The Program essentially has two objectives: (1) provide property owners with economically feasible flood insurance which was otherwise unavailable, and (2) require that new construction in flood prone areas be located and built in a manner which would reduce loss of life and property. *Id.* The Treasury was simply overburdened by flood costs without the NFIP because private insurers were unwilling to provide flood insurance, leaving the U.S. government with huge flood-related disaster relief bills:

> [T]he principal purpose in enacting the Program was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance.

*Till v. Unifirst Federal Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir.1981). *See also* 42 U.S.C. §§ 4001 & 4002. Therefore, Congress created a program by which federal financial participation encouraged private insurers to offer flood insurance in a nationally uniform way.

Under Plan B of the NFIA, applicable in this case, the Director of FEMA is statutorily authorized by Congress to use federal

employees and/or private "insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the United States." *Id.* at § 4071(a)(1). Accordingly, FEMA promulgated the SFIP, set forth in 44 C.F.R. Pt. 61, App. A(1), (2), and (3), and provided for marketing and claims adjustment of that SFIP by private insurers operating as "Write–Your–Own" ("WYO") companies. 44 C.F.R. § 62.23. Today, these companies write over ninety percent of all SFIPs in the country. The regulations creating the WYO Program were established in 1983, the same year that Congress amended the NFIP jurisdictional statutes, 42 U.S.C. §§ 4053 and 4072, to add the words "original exclusive" in front of the word "jurisdiction."

WYO Program companies issue SFIPs in their names, 44 C.F.R. §§ 61.13(f), 62.23(a), and collect premiums in segregated accounts from which they pay claims and make necessary refunds under those policies. *Id.* at § 62, App. A, Arts. II(E), III(D), and III(E). After deducting the companies' fees and administrative costs, premiums collected from policy holders are deposited in the National Flood Insurance Fund in the U.S. Treasury. 42 U.S.C. § 4017(d). "Premiums are federal funds from the moment they are collected," with interest earned thereon belonging to the United States (WYO companies must remit to the Treasury "all funds, including interest, not required to meet current expenditures"—currently limited to $5,000.00). 44 C.F.R. Pt. 62, App. A, Art. VII, B. In the absence of sufficient funds in their segregated accounts, WYO Program companies pay claims and make refunds by drawing on FEMA letters of credit from the U.S. Treasury. Thus, any payment on a claim, whether from FEMA or from a WYO, is "a direct charge on the public treasury." *Gowland,* 143 F.3d at 955.

■ The SFIP requires the insured to submit a signed and sworn Proof of Loss statement in support of the insured's claim within sixty days of the date of loss. 44 C.F.R. Pt. 61, App. A(3), Art. 10(O)(3). No WYO Company has any permission to alter, vary, or waive any provision of an SFIP, as such actions may not be taken without the express written consent of the Federal Insurance Administrator. 44 C.F.R. Pt. 61.4(b), 61.13(d), and 62.23(c) and (d). WYO carriers must "strictly construe and enforce" all SFIP provisions. *Gowland,* 143 F.3d at 953. Thus, WYO carriers could not alter the terms of claims handling set forth in the SFIP, even if such claims handling would violate the law of any particular state. WYO companies defend against claims but FEMA reimburses them for defense costs, 44 C.F.R. § 62.23(i)(6), because they are fiscal agents of the United States, 42 U.S.C. § 4071(a)(1), although they do not act as general agents of the United States, 44 C.F.R. § 62.63(g).

### B. *Proof of Loss Requirement*

■ Omaha seeks summary judgment on the present contract claims because plaintiffs failed to submit a sworn Proof of Loss statement for flood damage to the insured property in excess of the amount for which they have already been compensated. Plaintiffs claim that they only partially failed to meet the proof of loss requirement. There is no dispute that plaintiffs filed a sworn Proof of Loss in the amount of $4,804.56 on April 15, 1999 or that Plaintiffs received a check from Omaha on May 6, 1999 for that amount. There is also no dispute that no other Proof of Loss, in the amount of $71,500 or otherwise, was ever submitted by plaintiffs to Defendant Omaha. Because plaintiffs received a check from Omaha for the full amount claimed on April 15, 1999, and because plaintiffs have not submitted any other proof of loss for a claim in excess of that amount, there is no genuine issue of material fact as to plaintiff's complete failure to comply with the requirements of their SFIP, and Defendant's motion for summary judgment on the remaining con-

tract claims must be granted as a matter of law.

■ The SFIP provides, in pertinent part:

O. *Requirements in Case of Loss:* should a *flood* loss occur to the insured property, the Insured must:

[ ... ]

3. Within 60 days after the loss, send the Insurer a proof of loss, which is the Insured's statement as to the amount it is claiming under the *policy* signed and sworn to by the Insured. . . .

44 C.F.R. Pt. 61, App. A(3), Art. 9(O)(emphasis in original). Because federal funds are the source for all payments to claimants under a SFIP, all the requirements, particularly the proof of loss requirement, have been strictly construed. *Van Holt v. Liberty Mut. Ins. Co.,* 163 F.3d 161 (3d Cir.1998); *Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir.1998); *Kennedy v. CNA Ins. Co.,* 969 F.Supp. 931, 934 (D.N.J. 1997); *Brookville Mining Equip. v. Selective Ins.,* 74 F.Supp.2d 477, 480 (W.D.Pa. 1999). Strictly construed, the requirement serves as a bar where the claimant fails to submit a proof of loss:

As the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced, we hold that an *insured's failure to provide a complete, sworn proof of loss statement,* as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim.

*Brookville,* 74 F.Supp.2d at 480 (citing *Gowland,* 143 F.3d at 954)(emphasis added).

Plaintiffs' attempt to distinguish their case as a "partial failure" to comply with the Proof of Loss requirement in 44 C.F.R. Pt. 61, App. A(3), Art. 10(O)(3), from the applicable cases cited by Defendant, which they describe as "complete failures" to comply, demonstrates a misunderstanding of the Regulations and their SFIP. Plaintiffs submitted a sworn Proof of Loss statement for a total loss amount of $4,804.56 and received a check from Omaha in that amount. Plaintiffs' claim was made and it was satisfied. Subsequent claims that the payment only partially satisfied Omaha's obligation because it was insufficient to cover the flood damage alleged by Plaintiffs and their engineer do not give Plaintiffs license to disregard the requirements for any additional loss payments they seek in excess of the total net amount previously claimed under their policy. The disputed claim at issue in this case is for the difference between the amount Plaintiffs are now claiming and the amount that they have already been paid. Plaintiffs' failure to submit a proof of loss statement, late or otherwise, for an amount in excess of that already paid by Omaha, represents a complete failure to comply with the federal regulations and the terms of their SFIP and therefore the case law from this Circuit cited by Defendant controls and bars Plaintiffs' present claim for additional payment.

### C. *Waiver*

Plaintiffs next contend that the doctrine of waiver bars Omaha from asserting the complete defense of plaintiffs' failure to comply with the proof of loss requirement with respect to the remaining claims. Plaintiffs identify defendant's extension of the due date for the Proof of Loss statement, defendant's continued negotiations with plaintiffs after the passage of the original sixty day period, and defendant's ultimate payment of $4,804.56 as evidence that Omaha waived the sworn Proof of Loss requirement altogether. Defendant contends, and this Court agrees, that if defendant's letters and negotiations clearly demonstrated anything, it was that no payment would be made on plaintiffs' account without submission of the requisite sworn Proof of Loss statement. Defendant's conduct further confirmed that it was not waiving the Proof of Loss requirement, because when plaintiffs submitted their

Proof of Loss on April 15, 1999, it was in fact considered as paid.

■ This Court first notes that general doctrines of waiver do not apply when the insurer is an agency of the United States. *Cross Queen, Inc. v. Director, Federal Emergency Management Agency,* 516 F.Supp. 806, 809 (D.Vi.1980). The Honorable Stanley S. Brotman in this Court acknowledged that although Omaha is not an agency of the United States, the policy issued to plaintiffs provides federal coverage pursuant to federal law. Thus, Judge Brotman concluded, "where th[e] policy and the federal law from which it derives delimit waiver, the court must conclude that [the] general waiver doctrine usually applicable in insurance cases is inapposite." *Gagliardi v. Omaha Prop. & Ins. Co.,* 952 F.Supp. 212, 216 (D.N.J.1997).

■ In this case, the Plaintiffs' policy clearly states "[t]his Standard Flood Insurance Policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action the insurer takes under the terms of this policy can constitute a waiver of any of its rights." (Pls.' Opp. to Mot. for Summ. J., Ex. A at 24.) The policy allows a waiver of the requirement only in limited circumstances, not present here, and then only if the insured signs and swears to a detailed adjuster's report of the claimed loss, which is also absent here. (*Id.*) Furthermore, the Regulations unequivocally provide that "[t]he Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than by the **express written consent of the Administrator.**" 44 C.F.R. § 61.13(d)(emphasis added).

Plaintiffs specifically identify Defendant's letters of June 17, 1998 and August 24, 1998 extending the proof of loss deadline and the continued negotiations,[2] which resulted in a May 6, 1999 payment of the $4,804.56 claim submitted by plaintiffs, as "convincing evidence" of defendant's waiver of the proof of loss requirement. (Pls.' Opp. to Mot. for Summ. J. at 6.) Plaintiffs do not contest that each correspondence received from defendant clearly advised them that the reason for the closure of their file was the failure to submit a sworn proof of loss statement and that each letter included defendant's statement that it had no intent of waiving or relinquishing any of its rights or defenses under the policy. (*Id.*) Plaintiffs' belief that by extending the time-period for submission of a proof of loss statement the Defendant also waived the submission requirement altogether is incorrect. Had Plaintiffs complied with their clear and unambiguous obligations under their SFIP policy and the relevant Code of Federal Regulations sections, then no such extension would have been necessary.

This Court is unconvinced that defendant's letters and resolution of the claim for which plaintiffs did submit a sworn proof of loss statement constitute a waiver of the requirement for any additional losses now claimed. Furthermore, it is clear that the Federal Insurance Administrator did not provide plaintiff with the written waiver required under SFIP Art. 10(D). Moreover, even if for the sake of argument this Court assumes that a waiver occurred in this case, the plaintiff's claim would still fail since they never signed and swore to the adjustor's report. Because no there is no genuine issue of material fact to be determined by a jury, plaintiffs' argument regarding waiver fails as a matter of law.

---

**2.** The Regulations clearly state that oral assurances or unauthorized actions of the insurer's representatives or agents cannot operate to waive a provision of the policy. 44 C.F.R. § 61.5(e)(1999); *see Kennedy,* 969 F.Supp. at

935, n. 6. Therefore, plaintiffs' assertion that Defendant's attempts to resolve any legitimate claim they had constituted a waiver cannot succeed.

## D. *Estoppel*

Finally, Plaintiffs contend that the doctrine of equitable estoppel bars Omaha from asserting the proof of loss requirement as a defense. In support of their position, Plaintiffs argue that Defendants represented to the plaintiffs that their claim was still payable, actively encouraged negotiations with plaintiffs, and made a "partial" payment on plaintiff's claim.

■■■ "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). The burden of proving estoppel is on the party invoking the doctrine, in this case plaintiffs. *Brookville Mining Equip.*, 74 F.Supp.2d at 481 (quoting *United States v. Asmar*, 827 F.2d 907 (3d Cir.1987)). To establish the elements of estoppel, plaintiff must show: (1) a knowing misrepresentation by another party; (2) which it reasonably relied upon; (3) to its detriment. *Heckler*, 467 U.S. at 59, 104 S.Ct. at 2223; *Asmar*, 827 F.2d at 912. A party's reliance is reasonable if "the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler*, 467 U.S. at 59, 104 S.Ct. at 2223. The Third Circuit has adopted the majority view which recognizes estoppel as an equitable defense against government claims and imposes an additional burden requiring claimants to "establish some affirmative misconduct on the part of the government officials." *Fredericks v. Commissioner*, 126 F.3d 433, 438 (3d Cir.1997).

■■ It would be difficult for plaintiffs to prove any part of the estoppel test, but it is impossible for them to prove the reasonable reliance element, as they must be presumed to know the law requiring the return of a proof of loss statement. *See Heckler*, 467 U.S. at 63, 104 S.Ct. 2218, 81 L.Ed.2d 42; *Brookville Mining Equip.*, 74 F.Supp.2d at 481. The Supreme Court has noted that "those who deal with the Government are expected to know the law

and may not rely on the conduct of Government agents contrary to the law." *Heckler*, 467 U.S. at 63, 104 S.Ct. 2218. This expectation has also been extended to claimants who deal with a fiscal intermediary of the government. *Heckler*, 467 U.S. at 63, 104 S.Ct. 2218, 81 L.Ed.2d 42; *Brookville Mining Equip.*, 74 F.Supp.2d at 481.

The plaintiffs in this case, similar to the plaintiffs in *Brookville*, had abundant opportunity to become aware of the proof of loss statement requirement and Defendant's inability to waive or change that requirement without written approval. The Proof of Loss requirement is clearly recited in plaintiffs' SFIP (Pls.' Opp. to Mot. for Summ. J., Ex. A at 30) and in the Code of Federal Regulations (44 C.F.R. § 61, App. A(2), Art. 8(O)). Plaintiffs cannot show that they reasonably relied on Defendant's letters (which expressly stated that he needed to file a sworn proof of loss by a stated date to receive loss payments) and negotiations (which could not, and did not, result in a payment until Plaintiffs complied with the submission requirements) in the face of contrary federal regulations such that a claim of estoppel would succeed. No reasonable factfinder could conclude that defendants misled plaintiff about the terms of their SFIP and specifically the sworn Proof of Loss requirement. Thus, because there is no genuine issue of material fact to be decided by a jury, plaintiff's argument regarding estoppel fails as a matter of law. *See* Gagliardi, 952 F.Supp. at 217 (citing *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir. 1996)).

## IV. *Conclusion*

For the reasons set forth herein, the court finds that Defendant has met its burden of demonstrating that no genuine issue of material fact exists to be decided as to Plaintiff's contract claims. Additionally, Plaintiff has presented no probative evidence to overcome Defendant's showing. The plaintiff's failure to comply with

the insurance policy's requirements regarding proof of loss for any claim exceeding the $4,804.56 paid in satisfaction of their submitted claim bars the present action as a matter of law. This court also finds that plaintiffs claims of waiver and estoppel cannot lie against defendant and therefore there is no need for this Court to analyze the substantive contentions raised concerning the extent of the policy's coverage. Defendant's motion for summary judgment is hereby granted, and the Complaint is dismissed in the accompanying Order.

## ORDER

This matter having come before the court upon Defendant Omaha Property and Insurance Company's motion for summary judgment pursuant to Fed.R.Civ.P. 56; and this Court having considered the parties' submissions; and for the reasons expressed in an Opinion of today's date;

IT IS this *30th* day of October 2000 hereby

ORDERED that defendant's motion for summary judgment on plaintiff's remaining contract claims be, and hereby is, *GRANTED*, and the Complaint shall be, and it hereby is, *DISMISSED*.