**S.A. BURNS**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY**

**No. CIV. A. G–99–695.**

United States District Court, S.D. Texas, Galveston Division.

Feb. 18, 2000.

Michael P. Von Blon, Michael P. Von Blon & Associates, Houston, TX, for S A S.A. Burns, plaintiff.

John B. Kinchen, Assistant U.S. Attorney, Houston, TX, for Federal Emergency Management Agency, defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGEMENT

KENT, District Judge.

Plaintiff S.A. Burns owns a beach house in Galveston, Texas which suffered flood damage caused by Tropical Storm Frances on September 11, 1998. Defendant Federal Emergency Management Agency ("FEMA") provided flood insurance on the beach house. Burns lodged a claim with FEMA for her damages, which FEMA paid in part. Burns then instituted the present suit to collect the unpaid portion of her claim. Now before the Court is FEMA's Motion To Dismiss Or In The Alternative For Summary Judgment, filed January 21, 2000. For reasons explained more fully below, Defendant's Motion is DENIED in its entirety.

### I. Factual & Procedural Summary

Burn's beach house was among the many properties damaged when Tropical Storm Frances visited its wrath upon the Texas Gulf Coast in September of 1998. Located approximately one hundred feet from the waters of the Gulf of Mexico, Plaintiff's beach house experienced substantial damage: among other things, about three feet of sand was washed out from under it, various support pilings were damaged, the air conditioner was washed away, and the septic system was damaged.

Burns had insured her beach house under a Standard Flood Insurance Policy ("SFIP") issued through the National Flood Insurance Program ("NFIP"). The NFIP was established in 1968 pursuant to the National Flood Insurance Act, 42 U.S.C. § 4001 et seq. The NFIP is a federally subsidized program which provides flood insurance at or below actuarial rates. *See Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998). Currently, the NFIP is administered by the Federal Insurance Administration, an administration within FEMA.

About a month after the storm, Burns hired Fittz & Shipman, a firm of consulting engineers, to conduct a "Structural Examination" of her beach property. Fittz & Shipman's report of October 19, 1998 concluded that "Tropical Storm Frances did severe damage to the Burns beach house" and that "the storm appears to have damaged the property beyond repair." The report also predicted that because "the vegetation line has been moved inland of the property...various state and local agencies will not allow rebuilding of the property." Apparently relying on the Fittz & Shipman report and her own evaluation of the property, Burns concluded that her beach house was a total loss, and consequently filed a Proof of Loss form with FEMA for "36,589.78 approximately." FEMA ultimately rejected this claim on the grounds that Burns had failed to timely supply bills, receipts, and related documents for the amount claimed.

Meanwhile, FEMA had a different engineering firm, Norex Engineering, Inc., conduct a "Structural Evaluation" of the beach house. Norex concluded that the structure had been in poor condition before the storm and that "because of a

previous lack of routine maintenance on the structure, damage caused by winds and tides was in excess of what would have been considered normal." In particular, Norex noted that much of the damage "had existed for some time" and that only 35% of the floor deflection was "a direct result of the storm."

FEMA chose the firm of Ray Graf, Inc. to handle the claim adjustment work. Andy Reed, an insurance adjuster associated with Ray Graf, prepared a detailed National Flood Insurance Program Final Report. Reed's Report estimated the damages at $20,013.41, based largely on the conclusions of the Norex firm that much of the flood damage was caused by the lack of routine maintenance and the poor condition of the house before the storm.

FEMA's position throughout the prelitigation negotiations was that Burns was not entitled to *any* flood insurance proceeds due to her alleged failure to timely comply with the documentation requirements of her policy. Nevertheless, on April 29, 1999, without waiving any defenses it might have under the policy, FEMA sent Burns a check for $19,013.41. This amount represented the undisputed portion of the damages, less a $1000 deductible.

At this point, the difference between Burns' original claim and the actual payment made was $17,576.37. FEMA denied liability for this amount, and reminded Plaintiff that if she wished to recover the difference she had one year from the date of the original claim denial to file suit in federal court. Pursuant to the provisions of 42 U.S.C. § 4072, Burns timely filed suit in this Court on November 12, 1999, alleging that Defendant's non-payment of her claim amounts to breach of the SFIP contract.

Now before the Court is FEMA's Motion To Dismiss, Or In The Alternative For Summary Judgment. FEMA seeks dismissal of the suit for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1); dismissal for failure to state a claim for relief pursuant to Rule 12(b)(6), and summary judgment, pursuant to Rule 56, that Burns is owed nothing further under the flood policy.

All three of these Motions are based on FEMA's contention that Burns failed to timely comply with all the conditions precedent for recovering under her Standard Flood Insurance Policy. The terms and conditions of the SFIP are set out in 44 C.F.R. Pt. 61, App. A(1). More specifically, FEMA points to the provisions of Art. 9, "General Conditions and Provisions," Paragraph J, "Requirements in Case of Loss," Clause 5, which provides:

> Document the loss with all bills, receipts, and related documents for the amount being claimed;

Clause 3 of Paragraph J provides:

> Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information...

Clause 3 goes on to specifically list nine items of information which must be furnished to FEMA within 60 days of the date of loss. *See* 44 C.F.R. Pt. 61, App. A(1), Art. 9, ¶ J, cl. 3, a-i. FEMA argues that Burns failed to provide "bills, receipts, and related documents" within sixty days of the date of loss to substantiate her claim for "$36,589.78 approximately." Consequently, according to FEMA, dismissal is appropriate pursuant to Rule 12(b)(1) and 12(b)(6), or in the alternative, that FEMA is entitled to summary judgment. The Court will address these three Motions in turn.

*II. Lack of Subject Matter Jurisdiction*

■ A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Miss., Inc., v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998). The burden of proof on a motion to dismiss under Rule 12(b)(1) is on

the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984); *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex. 1995).

FEMA argues that Burns failed to comply with all of procedural requirements for filing a claim under her SFIP because she allegedly failed to supply "bills, receipts, and related documents" within 60 days of the date of loss. According to FEMA, the procedural requirements of the SFIP "constitutes conditions precedent to a waiver of sovereign immunity by the federal government." Therefore, "[a]bsent such a waiver, the Court has no subject matter jurisdiction." FEMA explicitly contends that Burns' alleged procedural defaults deprives the Court of subject matter jurisdiction and mandates dismissal pursuant to Rule 12(b)(1). In support of this contention, FEMA cites to two cases: *West Augusta Dev. Corp. v. Giuffrida*, 717 F.2d 139 (4th Cir.1983) and *Wagner v. Director, Federal Emergency Management Agency*, 847 F.2d 515, 518 (9th Cir.1988).

The most charitable explanation for Defendant's citation of such non-binding authority, rather than Fifth Circuit case law squarely on point to the contrary, is simply that the Assistant United States Attorney failed to adequately research the legal authority underlying its Motion to Dismiss.[1] The Court is loath to conclude that such a professional would ever attempt to affirmatively mislead the Court. In any event, Defendant's contention that this Court lacks subject matter jurisdiction is completely unavailing: when there is binding Fifth Circuit authority squarely on point, the Court is thereby bound.

■ In *Reeves v. Guiffrida*, the Fifth Circuit unambiguously rejected FEMA's contention that failure to comply with the procedural requirements of the SFIP deprived the district court of subject matter jurisdiction, and reversed the district court for dismissing the suit pursuant to Rule 12(b)(1). *See Reeves*, 756 F.2d 1141, 1143 (5th Cir.1985). Although *Reeves* is nowhere cited in either Defendant's Motion to Dismiss or Plaintiff's Response, the Court reaches the mandated result.

In a final note, the Court would also express its modest exasperation that the Fourth Circuit case does not even stand for the proposition for which FEMA cites it. In *West Augusta Dev. Corp. v. Giuffrida*, the Fourth Circuit affirmed the district court's grant of *summary judgment* in favor of FEMA. *See West Augusta Development Corp.*, 717 F.2d 139–40 ("The plaintiff appeals from the grant of summary judgment in favor of defendant...We affirm"). Thus the Fourth Circuit agreed with the district court that it had subject matter jurisdiction and agreed that it was correct to *reach the merits* of the case and grant summary judgment in favor of FEMA. The Fourth Circuit in no way even hinted that granting summary judgment was inappropriate or that the better course of action would have been to dismiss the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Since the Court assumes that an experienced and intelligent Assistant United States Attorney knows the difference between a Rule 12(b)(1) dismissal and a grant of summary judgment in favor of a defendant, the Court can only assume that this misleading citation was the result of inadequate or hasty legal research.

As of course required, the Court will decide FEMA's 12(b)(1) Motion under applicable Fifth Circuit authority. In *Reeves*, the court concluded that FEMA's 12(b)(1) motion, though lodged as a jurisdictional challenge, was "inseparable from the merits of the legal issue, that is, whether failure to file the proof of loss

---

1. As this Court's beloved predecessor, the Hon. Hugh Gibson, once put it, "The Court begins with some fundamental concepts that should be common knowledge to the attorneys. First, this Court is located within the Fifth Circuit and, absent controlling or relevant decisions from the Supreme Court, is subject to the Fifth Circuit's interpretations of the law." *Garg v. Narron*, 710 F.Supp. 1116, 1117 (S.D.Tex.1989)(Gibson, J.)

precludes recovery on the policy." *See Reeves,* 756 F.2d at 1143. The court went on to explain that:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case....This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides...a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6)(for failure to state a claim) or Rule 56 (summary judgment)—both of which place greater restrictions on the district court's discretion.

*Id.* (quoting *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981)). "We therefore hold that the district court had jurisdiction of the action, and we treat its dismissal as one under Rule 12(b)(6) for failure to state a claim upon which relief may be granted." *Reeves,* 756 F.2d at 1143.

■ It is not for this Court to pass on whether *Reeves* was rightly decided. *See Exim Mortgage Banking Corp. v. Witt,* 16 F.Supp.2d 174, 177 (D.Conn.1998)(dismissing suit against FEMA for lack of subject matter jurisdiction and rejecting reasoning of *Reeves* on the ground that the *Williamson* decision upon which it rests did not address situations involving the federal government's assertion of sovereign immunity). The *Reeves* decision is squarely on point and factually indistinguishable, and the Fifth Circuit has not seen fit to cast any doubt upon its validity. FEMA's Rule 12(b)(1) Motion must therefore be treated as either a Motion to Dismiss under Rule 12(b)(6) or a Motion for summary judgment. *See Reeves,* 756 F.2d at 1143; *Daigle v. Opelousas Health Care, Inc.,* 774

F.2d 1344, 1347 (5th Cir.1985)(citing *Reeves* and explaining that upholding existence of subject matter jurisdiction in these circumstances is "consistent with the great weight of legal authority."); *O'Conner v. Perry,* No. Civ. A. 96–2781, 1997 WL 16620, at *1 (E.D.La. Jan.15, 1997)(applying *Reeves* rule and rejecting FEMA's Motion to Dismiss under Rule 12(b)(1)); *Maloney v. Federal Emergency Management Agency,* No. Civ. A. 96–1879, 1996 WL 626325, at *2 (E.D.La. Oct.24, 1996)(Sear, C.J.)(same). Consequently, FEMA's Motion to Dismiss, made pursuant to Rule 12(b)(1), is emphatically DENIED.

### III. Failure to State a Claim

Defendant has also moved to dismiss pursuant to Rule 12(b)(6). Moreover, as just explained, the Court must treat Defendant's Rule 12(b)(1) Motion to Dismiss as either a Rule 12(b)(6) Motion or a Motion for summary judgment. In light of the fact that both Plaintiff and Defendant have submitted affidavits, exhibits, and other material outside the pleadings, the Court elects to treat Defendant's Rule 12(b)(6) Motion as a Motion for summary judgment made pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b)("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56"); *Young v. Biggers,* 938 F.2d 565, 568 (5th Cir.1991)("Because [defendants] submitted matters outside the pleadings with their motion to dismiss or in the alternative for summary judgment, the district court properly characterized that motion as a motion for summary judgment."); *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 352 n. 27 (5th Cir.1989)(plaintiffs properly recognized that motion to dismiss should be treated as motion for summary judgment since they relied on affidavits).

## IV. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

FEMA argues that a prerequisite to recovery under the SFIP is the submission, within 60 days of the date of loss, of all "bills, receipts, and related documents" necessary to substantiate a claim. *See* 44 C.F.R. Part 61, Art.9, ¶ J, cl. 5. FEMA claims that Burns failed to timely submit the requisite documentation, which therefore entitles FEMA to summary judgment. The Court rejects both of FEMA's contentions. Article 9, Paragraph J, clause 5 of the SFIP does not require a claimant to submit "bills, receipts, and related documents" within 60 days of the date of loss in order to recover under the policy. Moreover, even if this were a requirement for recovery under the SFIP, a reasonable fact-finder could conclude that Burns did submit the requisite documentation in a timely fashion.

### A. The Article 9, Paragraph J Requirements

In order to properly analyze FEMA's interpretation of Paragraph J, it is necessary to set out in some detail this section of the SFIP:

### J. Requirements in Case of Loss

Should a flood loss occur to your insured property, you must:

1. *Notify* us in writing as soon as practicable;

2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it; and

3. Within 60 days after the loss, *send us* a proof of loss, which is your statement as to the amount you are claiming under the *policy* signed and sworn to by you and *furnishing us* with the following information:

    a. The date and time of the loss;

    b. A brief explanation of how the loss happened;

    c. Your interest in the property damaged (for example, "owner") and the interest, if any, of others in the damaged property;

    d. The *actual cash value* or replacement cost, whichever is appropriate, of each damaged item of insured property and the amount of damages sustained;

    e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property;

f.   Details as to any other contracts of insurance covering the property, whether valid or not;

g.   Details of any changes in ownership, use, occupancy, location or possession of the insured property since the *policy* was issued;

h.   Details as to who occupied any insured *building* at the time of loss and for what purpose;  and

i.   The amount you claim is due under this *policy* to cover the loss, including statements concerning:

(1) The limits of coverage stated in the *policy;*  and

(2) The cost to repair or replace the damaged property (whichever costs less).

4.   Cooperate with our adjustor or representative in the investigation of the claim;

5.   *Document* the loss with all bills, receipts, and related documents for the amount being claimed;

*See* 44 C.F.R. Part 61, Art.9, ¶ J (underscoring added)(italics in original).

There is ample authority for the proposition that an insured cannot recover under a SFIP if the Proof of Loss is not sent to FEMA within 60 days of the date of loss or if the Proof of Loss is unsigned, unsworn, incomplete or otherwise inadequate. *See id.* at cl. 3; *Gowland,* 143 F.3d at 953 ("[W]e hold that an insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim."); *Forman v. FEMA,* 138 F.3d 543, 545 (5th Cir.1998)(Proof of Loss form was inadequate where insured wrote "these figures are unacceptable" next to listed amounts and failed to provide acceptable alternate estimate of damages); *Holeman v. Director, Federal Emergency Management Agency,* 699 F.Supp. 98, 99 (N.D.Tex.1988)(no recovery where insured failed to furnish a sworn Proof of Loss within 60 days from date of loss).

However, in the present case FEMA is not claiming that Burns' Proof of Loss was either untimely or inadequate under the provisions of Art. 9, Paragraph J, clause 3. Indeed, the Proof of Loss supplied by Burns appears to provides all the information required by clause 3, subsections (a) through (i). Instead, FEMA argues that Burns failed to comply with the provision of Art. 9, Paragraph J, clause 5, in that she failed to furnish FEMA with "all bills, receipts, and related documents" within 60 days of the date of loss. FEMA's reading of Paragraph J, clause 5 is wholly unpersuasive.

In the first place, a common-sense reading of the provisions of Paragraph J reveals that the 60 day time limit applies *only* to the filing of a Proof of Loss and the provision of certain specifically enumerated additional items of information. *See* 44 C.F.R. Pt. 61, App. A(1), Art. 9, ¶ J. The phrase "within 60 days" occurs within clause 3, and plainly modifies *only* the requirements delineated within clause 3. The requirement that an insured document the loss with "bills, receipts, and related documents" is set forth in clause 5, an entirely separate and distinct clause which is silent as to deadlines. Thus even if an insured were under a duty to send FEMA "bills, receipts, and related documents," nothing in the SFIP imposes a 60 day filing deadline for such submissions. Although FEMA cites a variety of cases holding that the filing of an inadequate or untimely *Proof of Loss* precludes recovery under the provisions of clause 3, FEMA cites absolutely no authority for the proposition that clause 5 requires the filing of "bills, receipts, and related documents" within 60 days of the date of loss. Given the total absence of any authority supporting FEMA's reading a 60 day deadline into clause 5, the Court rejects this implausible interpretation.

Second, it is extremely doubtful that clause 5 requires an insured to *send* FEMA "bills, receipts and related documents" at all, much less that an insured

must do so within a 60 day deadline. Clause 5 requires the insured to "document the loss." The word "document" in this context is ambiguous: it might mean "maintain records and keep them on hand for future inspection *if FEMA requests it,*" or it might mean "generate and *send* these records to FEMA even if FEMA has not specifically requested them." However, in the context of Paragraph J, the former interpretation is far more plausible.

The SFIP employs a variety of entirely unambiguous phrases when it imposes a duty on an insured to send FEMA various materials, as opposed to a duty to simply generate or maintain those materials. For example, the insured must "notify" FEMA of the loss (cl.1); must "send" FEMA a Proof of Loss (cl.3), and must "furnish" FEMA with various information (cl.3, (a)-(i)). Thus if clause 5 were truly designed to impose a duty to *send* FEMA "bills, receipts, and related documents," even in the absence of a request to do so, it would have employed terms such as "send" or "furnish," rather than the ambiguous "document."

Moreover, other provisions of the SFIP are more consistent with reading "document" as meaning "maintain these records," rather than "send these records." Clause 6 states that "In completing the proof of loss, you must use your own judgment concerning the amount of the loss and justification for that amount." *See* 44 C.F.R. Pt. 61, App. A(1), Art. 9, ¶ J, cl. 6. If, as FEMA maintains, the insured were required as a matter of course to send "all bills, receipts, and related documents," it is likely that clause 6 would reference these supposedly obligatory supporting documents and at least suggest that the insured integrate these materials into the Proof of Loss when making a claim. Instead, clause 6 simply instructs the insured to "use your own judgment" and makes no mention at all of the "bills, receipts and related documents" the insured is supposedly required to submit along with the Proof of Loss.

Likewise, Paragraph K, clause 1 provides "If we specifically request it, in writing, you may be required to furnish us with a complete inventory...actual cash values or replacement costs...amounts of loss claimed, and any written plans and specifications for repairs..." *See id.* at ¶ K, cl. 1. This provision makes sense if Paragraph J simply requires an insured to generate and maintain records: these records would then be on hand if FEMA elects to more fully investigate the claim and specifically requests, in writing, to examine these retained documents. But Paragraph K, clause 1 would be largely superfluous if, as FEMA claims, Paragraph J already required the insured to *send* FEMA "all bills, receipts, and related documents for the amount being claimed," whether requested to do so or not. *Cf. Durkin v. State Farm Mutual Ins. Co.,* 3 F.Supp.2d 724, 728 (E.D.La.1997), *aff'd* 141 F.3d 1163 (5th Cir.1998)(insurance company not liable on flood claim because insured failed to supply documentation and an inventory despite repeated written requests by insurer to do so).

In sum, FEMA has failed to show there is any duty under the SFIP to *send* FEMA "bills, receipts, and related documents" absent a written request to do so. Even if there were such a duty, FEMA has failed to show that there is a 60 day deadline for such submissions. In either event, FEMA had not shown that Burns failed to strictly comply with the provisions of the SFIP, and consequently FEMA's Motion for Summary Judgment on this issue must be, and hereby is, DENIED.

## B. The Timeliness of Plaintiff's Submission of Documentation

■ Even if the above analysis were rejected, FEMA's Motion for Summary Judgment would still have to be denied. A reasonable fact-finder could conclude that Burns *did* supply FEMA with all the requisite documentation within 60 days of the date of loss.

'The parties agree that the date of loss was September 11, 1998. Thus even on FEMA's odd reading of Paragraph J, Burns had until November 11, 1998 in which to supply "bills, receipts, and related documentation."

However, on November 9, 1998, FEMA sent Burns a letter which confirmed that while ordinarily the deadline would be November 11, 1998, FEMA was granting Burns an extension of time in which "to conclude your claim with the adjustor and file your Proof of Loss with us." Insofar as FEMA was granting an extension of the deadline for filing a Proof of Loss, it must also have been granting an extension of the supposed deadline for submitting "bills, receipts, and related documentation." By the terms of this letter, FEMA established November 19, 1998 as the new deadline for required submissions.

Apparently, Burns did not have any "bills" or "receipts", because she neither repaired nor demolished her beach house.[2] Instead she commissioned the Fittz & Shipman "Structural Examination," which indicated that the storm "did severe damage to the Burns beach house" and "damaged the property beyond repair." A "Structural Examination" prepared by consulting engineers would appear to be about the best sort of "related document" Burns could possibly send to substantiate her claim that her beach house was a total loss. Incredibly, despite its total reliance on the strained argument that Burns failed to timely submit supporting documentation, FEMA never once mentions the Fittz & Shipman report.

Burns has supplied the Court with the affidavit of Yvonne Lyles in which Lyles swears that, on November 9, 1999, she faxed a copy of the Fittz & Shipman Structural Examination to Andy Reed, the insurance adjustor assigned to the Burns case. Lyles' sworn declaration is supported by an attached fax confirmation sheet.

Burns has also supplied the Court with a letter dated November 11, 1998 and signed by Andy Reed. The Reed letter specifically references the Fittz & Shipman report, and indicates that Reed had forwarded the entire file to FEMA.

Consequently, a reasonable fact-finder could conclude that the Fittz & Shipman report was sent to FEMA on or before November 11, 1998, and that it was actually received by FEMA within two or three business days. In light of the fact that the deadline had been extended to November 19, 1998, a reasonable fact-finder could certainly conclude that Burns timely furnished FEMA with all of her "bills, receipts, and related documents" necessary to substantiate her claim that the beach house was a total loss. Because a reasonable fact-finder could conclude that Burns strictly complied with the conditions of her SFIP, even on the strained reading of Paragraph J adopted by FEMA, Defendant's Motion for Summary Judgment must be, and hereby is, **DENIED.**

## V. The Future of This Case

Although the Court references the Fittz & Shipmann report in the course of denying FEMA's Motion for Summary Judgment, this in no way implies that the Court regards this report as the only competent evidence as to the extent and nature of Plaintiff's damages. In paying Plaintiff $19,013.41 for her damages, FEMA relied on the Norex report, which unlike the Fittz & Shipman report attributed a significant portion of the damages to the poor condition of the beach house prior to the storm. As explained above, the Court rejects FEMA's procedural defenses to liability. But there is still a genuine controversy over whether the beach house was repairable or a total loss, and what amount, if any, Burns is owed in excess of the $19,013.41 already paid. Having moved the focus away from the untenable procedural defenses asserted by FEMA, the Court now **STRONGLY URGES** both parties to concentrate on a common sense

---

**2.** Galveston County has condemned the house and declared it to be a public nuisance.

and prompt resolution of the true controversy in this case: Plaintiff's damages.

### VI. Conclusion

For the reasons set forth above, Defendant FEMA's Motion To Dismiss Or In The Alternative For Summary Judgment is **DENIED**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further motions on these issues, including motions to reconsider and the like.

**IT IS SO ORDERED.**