Ashraf A. **JAMAL**, Plaintiff,

v.

**TRAVELERS LLOYDS OF TEXAS INSURANCE COMPANY and Travelers Property & Casualty Insurance Company, Defendants.**

**No. Civ.A. H–99–4369.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 22, 2001.

No. Civ. A 89–0311, 1989 WL 517870, at *2–3 (D.D.C.1989)).

Allan G Levine, Hirsch and Westheimer PC, Houston, TX, Gregory S Levine, Houston, TX, Jeffrey Robert Matthews, Houston, TX, Toby C Easley, Houston, TX, for Ashraf A Jamal, plaintiff.

Nicholas E Zito, Markle Ramos et al, Houston, TX, for Travelers Lloyds of Texas Insurance Company, defendant.

Laurence E Boyd, Angleton, TX, Gerald J Nielsen, Nielsen Law Firm, Metairie, LA, for Travelers Property and Casualty Insurance Company, defendant.

## MEMORANDUM AND ORDER

CRONE, United State Magistrate Judge.

Pending before the court is Defendant Travelers Property & Casualty Insurance Company's ("TPCIC") Motion for Summary Judgment (# 49). TPCIC seeks summary judgment on Plaintiff Ashraf A. Jamal's ("Jamal") claim for breach of contract. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I. *Background*

TPCIC is a "Write–Your–Own" ("WYO") company authorized by the Fed-

eral Emergency Management Agency ("FEMA") to sell federally underwritten flood insurance, referred to as Standard Flood Insurance Policies ("SFIP"), as part of the National Flood Insurance Plan ("NFIP") under the National Flood Insurance Act ("NFIA"). In August 1997, Jamal purchased SFIP # 6–0031–5168–2 from TPCIC pertaining to his residence located at 7310 Lake Lane in Houston, Texas. Plaintiff's SFIP provided coverage in the amount of $85,800.00 for the building and $31,500.00 for its contents.

On September 11, 1998, Jamal's property was damaged by wind and by flood as a result of Tropical Storm Frances. On September 15, 1998, TPCIC sent an adjuster, Bob Hughes ("Hughes") from Bellmon Adjusters, to inspect Jamal's property. Hughes determined that funds were payable to Jamal for damages to the contents of the building in the amount of $31,500.00, the policy limit, and for damages to the building in the amount of $25,406.51. On November 2, 1998, Hughes sent Jamal a proof of loss form for his signature in the amount of $56,906.51, the sum of the determined damage amounts. On November 5, 1998, James Chandler ("Chandler"), Claims Examiner for TPCIC, sent Jamal a letter informing him that the proof of loss had to be received by November 16, 1998, in order for him to receive payment. On December 4, 1998, Hughes sent Jamal a letter reminding him that he had sent the proof of loss form to Jamal and notifying him that "[t]he company that writes your flood insurance has the option of denying your claim for lack of interest on your part if the time allotment provided in the policy is not adhered to." The policy provides that a signed proof of loss must be filed within sixty days of the loss.

During this time period, Hughes's supervisor, Michael Bellmon ("Bellmon"), reviewed Jamal's claims. In his report dated December 14, 1998, Bellmon indicates that he found an increased amount of $39,703.72 that could be paid on the build-

ing and that he had sent Jamal a second proof of loss form for his signature, reflecting the new amount allocated for the building. On April 19, 1999, Chandler sent Jamal another letter, reminding Jamal that "[t]he policy provisions state that you must file a formal proof of loss with this company within 60 days from the date of loss" and stating that, as a result of his failure to submit the proof of loss, TPCIC was closing his account without payment.

On June 22, 1999, Jamal filed one of the proof of loss forms he had previously received, signed but altered to show a claim for building damages in the amount of $85,800.00, the policy limit. On that date, he also submitted a signed proof of loss in the amount of the policy limit for the contents damage. On a supplemental adjuster's report, dated June 25, 1999, Bellmon noted that Jamal "has agreed to my building figures [$39,703.72] per his attorney by telephone on today's date." Bellmon's handwritten note on the same report shows that on June 28, 1999, Jamal's attorney called him back and said that Jamal would settle for the increased amount of $59,325.65 as to the building. In his note, Bellmon indicated, "I advised him that I had pushed the pencil as far as I could" and that it was up to Jamal to substantiate the increased amount. On July 6, 1999, TPCIC paid him the policy limits of $31,500.00 for damages to the contents of the building and $39,703.72 for damages to the building itself, as determined by Bellmon, consistent with what his attorney reported that Jamal had agreed to on June 25, 1999. Jamal admits that he received and negotiated the checks sent by TPCIC for both amounts.

On October 29, 1999, Jamal filed his original petition in the 113th Judicial District Court of Harris County, Texas, asserting that, under the SFIP and a separate homeowner's policy he had purchased from Defendant Travelers Lloyds of Texas Insurance Company, his entire loss of $270,000.00 was covered and that, taking into account the $71,203.72 already paid,

he is now due $198,796.28. While Jamal does not differentiate between the amounts he is claiming under each policy, he is presumably claiming the amount of $46,096.28 from TPCIC, representing the policy limits for building damage under the SFIP less the $39,703.72 already paid. While he alleges claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code against TPCIC, on January 26, 2001, the court dismissed his claims for breach of the duty of good faith and fair dealing and violations of the Texas Insurance Code as well as his claims for attorneys' fees, exemplary damages, and statutory penalties, as preempted by federal law. In its answer, TPCIC pleaded as an affirmative defense that Jamal had failed to comply with the requirement that he file a sworn proof of loss within sixty days after the loss.

On January 5, 2001, TPCIC moved for summary judgment on Jamal's breach of contract claim, asserting that Jamal is precluded from bringing a claim against it and is not entitled to payment for the remainder of his alleged damages due to his failure to submit a proof of loss within the required time period. TPCIC also notes that it has paid Jamal the policy limit for his contents damage, contends that Jamal failed to document the specific amount being claimed for additional building damage as required by federal law, and states that Jamal has not supported his claim for costs of labor, profit, and overhead. On January 19, 2001, Jamal responded that, because TPCIC paid him a portion of the amount he claims, it should be "either: 1) estopped from asserting the alleged lateness of the proof of loss (after all, Defendant paid the claims based on these forms); or 2) be deemed to have waived the lateness because of the issuance of checks (the federal insurance administrator waived this requirement in writing when it authorized Defendant to pay the claims)." He also stated that he is not making a claim against TPCIC for additional coverage for the damage to the building's contents or for cost of living, subsidence, "and other such items."

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.

*See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321–22; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir.1993)); *see Reeves,* 120 S.Ct. at 2110; *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321; *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997), *cert. denied,* 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *see Marshall,* 134 F.3d at 321. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves,* 120 S.Ct. at 2110 (citing 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529, at 299 (2d ed.1995)). "That is, the court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* (quoting WRIGHT & MILLER, *supra.,* at 300).

Nonetheless, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Hart,* 127 F.3d at 435; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner,* 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

Where, as here, a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with

regard thereto." *Rushing v. Kansas City Southern Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1074 (5th Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)); *see Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (finding that "if the movant bears the burden of proof ... because he is ... asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor").

## B. *The Proof of Loss Requirement*

■ "Federal law governs disputes over coverage arising under the National Flood Insurance Act of 1968." *Hanover Bldg. Materials, Inc. v. Guiffrida,* 748 F.2d 1011, 1013 (5th Cir.1984); *see Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 390 (9th Cir.), *cert. denied,* — U.S. —, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); *McHugh v. United Serv. Auto. Ass'n,* 164 F.3d 451, 454 (9th Cir.1999); *Leland v. Federal Ins. Adm'r,* 934 F.2d 524, 529 (4th Cir.), *cert. denied,* 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991); *Sodowski v. National Flood Ins. Program,* 834 F.2d 653, 655 (7th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); *West v. Harris,* 573 F.2d 873, 881–82 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). "When such disputes arise, they are resolved under federal law 'by drawing upon standard insurance law principles.'" *Hanover Bldg. Materials, Inc.,* 748 F.2d at 1013 (quoting *West,* 573 F.2d at 881); *accord Flick,* 205 F.3d at 390. "The meaning and effect of the insurance contract depends on the meaning and effect of the regulations, and the statute authorizing and directing the regulations and defining the coverage." *Berger v. Pierce,* 933 F.2d 393, 397 (6th Cir.1991). "Federal law has long recognized that an insured must comply strictly with the terms and conditions of a federal insurance policy." *Flick,* 205

F.3d at 390 (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). As a consequence, "case-law clearly indicates that federal common and statutory law preempts state principles of contract law for purposes of the interpretation of policies issued pursuant to the National Flood Insurance Act of 1968." *Friedman v. South Carolina Ins. Co.,* 855 F.Supp. 348, 350 (M.D.Fla.1994).

■ Payments made pursuant to a SFIP are "'a direct charge on the public treasury.'" *Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir.1998) (quoting *In re Estate of Lee,* 812 F.2d 253, 256 (5th Cir. 1987)); *accord Forman v. FEMA,* 138 F.3d 543, 545 (5th Cir.1998). "Because flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of the National Flood Insurance Fund, a claimant under a [SFIP] must comply strictly with the terms and conditions that Congress has established for payment." *Flick,* 205 F.3d at 394 (citing U.S. CONST. art. I, § 9, cl. 7; *Office of Personnel v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)); *see Forman,* 138 F.3d at 545; *Durkin v. State Farm Mut. Ins. Co.,* 3 F.Supp.2d 724, 727 (E.D.La.1997), *aff'd,* 141 F.3d 1163 (5th Cir.1998). In *Merrill,* the Supreme Court recognized a general "'duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" *Flick,* 205 F.3d at 390 (quoting *Merrill,* 332 U.S. at 385, 68 S.Ct. 1).

The policy issued to Jamal provides, in relevant part:

Should a flood loss occur to your insured property, you must:

 * * * * * *

■ Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with [certain information]. . . .

SFIP art. 9(J)(3); *see* 44 C.F.R. Pt. 61, App. A(1)(J)(4); *Flick*, 205 F.3d at 389; *Gowland*, 143 F.3d at 953–54; *Forman*, 138 F.3d at 545; *Brookville Min. Equip. Corp. v. Selective Ins. Co. of Am.*, 74 F.Supp.2d 477, 480 (W.D.Pa.1999); *Dogwood Grocery, Inc. v. South Carolina Ins. Co.*, 49 F.Supp.2d 511, 513 (W.D.La.1999); *Kennedy v. CNA Ins. Co.*, 969 F.Supp. 931, 933 n. 2 (D.N.J.1997), *aff'd*, 156 F.3d 1225 (3d Cir.1998). The SFIP further states:

> The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

SFIP art. 9(J)(6); *see* 44 C.F.R. Pt. 61, App. A(1)(J)(7). An insurer is not required to supply the insured with a proof of loss form or to demand that an insured comply with the requirements of the SFIP. *See Riverdale Mills Corp. v. American Modern Home Ins. Co.*, 122 F.Supp.2d 114, 118 (D.Mass.2000); *Howard v. FEMA*, 960 F.Supp. 1095, 1103 n. 14 (S.D.Miss.1996); *Humphrey v. NFIP*, 885 F.Supp. 133, 137 (D.Md.1995).

 "Congress, through a valid act of delegation to FEMA, has authorized payment of flood insurance funds to only those claimants that submit a timely sworn proof of loss." *Flick*, 205 F.3d at 394. "The 60 day sworn proof of loss requirement is a condition precedent to payment for which all claimants are strictly accountable." *Id.* at 395; *accord Gowland*, 143 F.3d at 954. As the Fifth Circuit held in *Gowland*, "an insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." *Id.; accord Durkin*, 3 F.Supp.2d at 727–28; *Holeman v. FEMA*, 699 F.Supp. 98, 99 (N.D.Tex.1988).

██ An insured may not recover under a SFIP unless all of the policy requirements, including the timely submission of a proof of loss, have been satisfied. *See Flick*, 205 F.3d at 390–91 (citing *Wagner v. FEMA*, 847 F.2d 515, 518–19 (9th Cir. 1988)); *Gowland*, 143 F.3d at 954–55; *Burns v. FEMA*, 84 F.Supp.2d 839, 845 (S.D.Tex.2000); *Brookville Min. Equip. Corp.*, 74 F.Supp.2d at 480; *Holeman*, 699 F.Supp. at 99. The SFIP issued to Jamal expressly provides, "You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." SFIP art. 9(R); *see* 44 C.F.R. Pt. 61, App. A(1)(R). Thus, a "[plaintiff's] failure to timely file a proof of loss bars the claims." *Brookville Min. Equip. Corp.*, 74 F.Supp.2d at 480; *accord Gowland*, 143 F.3d at 954–55; *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F.Supp.2d 523, 530 (D.N.J.2000); *Steelcraft, Inc. v. Bankers & Shippers Ins. Co.*, 979 F.Supp. 60, 63 (D.Mass.1997); *Gagliardi v. Omaha Prop. & Ins. Co.*, 952 F.Supp. 212, 218 (D.N.J.1997).

It is undisputed that Jamal did not file his proof of loss forms until June 22, 1999, more than eight months after his losses occurred. He argues, however, that because TPCIC has already paid him a portion of the amount he seeks, it has waived its defense and is now estopped from denying him further coverage.

### 1. *Waiver*

 The SFIP's proof of loss requirement cannot be waived except by the express, written consent of the Federal Insurance Administrator. *See* 44 C.F.R. Pt. 61.13(d); 44 C.F.R. Pt. 61, App. A(1)(D); *Flick*, 205 F.3d at 391; *Gowland*, 143 F.3d at 954; *Phelps v. FEMA*, 785 F.2d 13, 19 (1st Cir.1986); *Messa*, 122 F.Supp.2d at 531; *Riverdale Mills Corp.*, 122 F.Supp.2d at 118; *Brookville Min. Equip. Corp.*, 74 F.Supp.2d at 481; *Kennedy*, 969 F.Supp. at 934. The SFIP purchased by Jamal states:

**Amendments, Waivers, Assignment:** This policy cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action we take under the terms of this policy can constitute a waiver of any of our rights.

SFIP art. 9(D); *see* 44 C.F.R. Pt. 61, App. A(1)(D). It also sets forth the conditions for waiver:

We may, at our option, waive the requirement for the completion and filing of a proof of loss in certain cases, in which event you will be required to sign and, at our option, swear to an adjusters [sic] report of the loss which includes information about your loss and the damages sustained, which is needed by us in order to adjust your claim.

SFIP art. 9(J)(7); *see* 44 C.F.R. Pt. 61, App. A(1)(J)(9). "In the absence of congressional action or a valid waiver by FEMA, we may not dispense with the terms and conditions established for the payment of flood losses that are insured under [SFIPs]." *Flick*, 205 F.3d at 396.

Courts have denied assertions of constructive waiver by conduct resulting from a flood insurer's continued efforts to resolve a claim beyond the date the proof of loss was due. *See Gowland*, 143 F.3d at 955; *Phelps*, 785 F.2d at 19; *Messa*, 122 F.Supp.2d at 530–31; *Riverdale Mills Corp.*, 122 F.Supp.2d at 117–120; *Gagliardi*, 952 F.Supp. at 216–17. In *Gowland*, the Fifth Circuit rejected the plaintiffs' argument that the insurer had waived the proof of loss requirement when it had, as here, repeatedly reopened their file after the sixty-day deadline and sent them a reminder letter regarding the proof of loss requirement. *See* 143 F.3d at 954–55. The court in Messa denied a waiver argument despite the fact that the defendant had given the plaintiff additional time to file a proof of loss, had continued to negotiate with the plaintiff after the sixty-day period, and had paid the plaintiff $4,804.56

for his damages. *See* 122 F.Supp.2d at 530–31.

The fact that TPCIC paid Jamal a portion of the money he now seeks does not, as he contends, constitute an express, written waiver by the Federal Insurance Administrator. The conditions for waiver are clearly set forth in Article 9(J)(7) of the SFIP issued to Jamal. *See Flick*, 205 F.3d at 392; *Gowland*, 143 F.3d at 954; *Messa*, 122 F.Supp.2d at 531. The record reflects that Jamal never signed an adjuster's report of the loss, as required to effect a waiver of the proof of loss requirement. *See Gowland*, 143 F.3d at 954. Furthermore, in both the November 5, 1998, and April 19, 1999, letters to Jamal reminding him of his obligation to file a proof of loss, TPCIC stated, "By this letter we do not intend to waive or relinquish any of our rights or defenses, either listed or unlisted, under this policy of insurance." Courts have found that such language supports a finding of non-waiver. *See id.; Riverdale Mills Corp.*, 122 F.Supp.2d at 118; *Gagliardi*, 952 F.Supp. at 217.

The SFIP clearly states that the actions of the insurer under the policy do not operate as a waiver of any of its rights. *See* SFIP art. 9(D); 44 C.F.R. Pt. 61, App. A(1)(J)(4). "[T]he federal regulations provide that no provision of the policy may be altered, varied, or waived without the express written consent of the Federal Insurance Administrator." *Gowland*, 143 F.3d at 954; *accord Messa*, 122 F.Supp.2d at 529; *Brookville Min. Equip. Corp.*, 74 F.Supp.2d at 481; *Dogwood Grocery, Inc.*, 49 F.Supp.2d at 513. Because there is no evidence that Jamal signed an adjuster's report or that the Federal Insurance Administrator otherwise expressly waived the proof of loss requirement in writing, Jamal cannot establish the existence of a waiver.

### 2. *Estoppel*

 " 'Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.' " *Messa*, 122 F.Supp.2d at 532 (quoting *Heckler v. Community Health*

*Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). The Fifth Circuit has made clear that neither the federal government nor WYO carriers may be estopped from denying coverage under a SFIP when SFIP requirements, such as the timely submission of a proof of loss, have not been met. *See Gowland*, 143 F.3d at 955; *Forman*, 138 F.3d at 545–46. In *Gowland*, the Fifth Circuit explained:

> When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution. "Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury."

143 F.3d at 955 (quoting *Richmond*, 496 U.S. at 425, 110 S.Ct. 2465); *accord Forman*, 138 F.3d at 545–46. In *Forman*, the Fifth Circuit, noting that the plaintiffs had failed to submit an adequate proof of loss, held that the "appellants failed to satisfy this regulatory requirement in this case. In such circumstances, there can be no estoppel of the Proof of Loss requirement, for we cannot estop 'the conditions defined by Congress for charging the public treasury.'" *Id.* at 546 (quoting *Richmond*, 496 U.S. at 420, 110 S.Ct. 2465). The court added:

> " 'not even the temptations of a hard case' will provide a basis for ordering recovery contrary to the terms of [a] regulation, for to do so would disregard 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.' "

*Id.* at 545 (quoting *Richmond*, 496 U.S. at 420, 110 S.Ct. 2465 (quoting *Merrill*, 332 U.S. at 385–86, 68 S.Ct. 1)).

 Furthermore, a claim of estoppel requires that the party asserting it demonstrate that it lacked knowledge or the means of knowledge of the true facts. *See Gowland*, 143 F.3d at 955 n. 6; *In re*

*Christopher*, 28 F.3d 512, 520 (5th Cir. 1994) (citing *Neiman–Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 n. 4 (5th Cir.1990)). An insured under a SFIP is "presumed to know the law requiring the return of a proof of loss statement." *Messa*, 122 F.Supp.2d at 532; *see Gagliardi*, 952 F.Supp. at 217. " '[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law.' " *Messa*, 122 F.Supp.2d at 532 (quoting *Heckler*, 467 U.S. at 63, 104 S.Ct. 2218). "This expectation has also been extended to claimants who deal with a fiscal intermediary of the government." *Id.* (citing *Heckler*, 467 U.S. at 63, 104 S.Ct. 2218; *Brookville Min. Equip. Corp.*, 74 F.Supp.2d at 481); *see Gowland*, 143 F.3d at 954–55; *Gagliardi*, 952 F.Supp. at 217–18. Here, where the proof of loss requirement is set forth both in the policy and by federal regulation and where TPCIC sent letters to Jamal reminding him of his obligation to file the proof of loss within the sixty-day time frame, Jamal cannot establish that he was unaware of the proof of loss requirement and, thus, cannot succeed on his equitable estoppel claim. *See Gowland*, 143 F.3d at 955 n. 6; *Messa*, 122 F.Supp.2d at 532; *Gagliardi*, 952 F.Supp. at 217–18.

Hence, because Jamal failed to file his proof of loss within the required time period, TPCIC had no obligation to pay for damages sustained under the SFIP. The fact that TPCIC paid a portion of his claims does not indicate that TPCIC waived the proof of loss requirement or permit the court to find that TPCIC is estopped from denying further coverage. "[T]he theories of substantial compliance, waiver, and equitable estoppel are inapplicable to the facts presented herein." *Gowland*, 143 F.3d at 955. Therefore, Jamal's claim for breach of contract is barred by his failure to file a proof of loss within sixty days of the loss, rendering summary judgment for TPCIC proper.

920

### III. *Conclusion*

Accordingly, TPCIC's Motion for Summary Judgment is GRANTED. There exist no outstanding issues of material fact as to Jamal's claims against this defendant, and TPCIC is entitled to judgment as a matter of law.

IT IS SO ORDERED.